Tamara L. Kapaloski (#13471)
**DORSEY & WHITNEY LLP**
111 S. Main Street, Suite 2100
Salt Lake City, UT 84111
Telephone:  (801) 933-7360
Fax:  (801) 933-7373
kapaloski.tammy@dorsey.com

Case Collard (admitted pro hac vice)
**DORSEY & WHITNEY LLP**
1400 Wewatta Street, Suite 400
Denver, CO 80202-5549
Telephone:  (303) 689-3400
Fax:  (303) 629-3450
collard.case@dorsey.com

*Attorneys for Plaintiffs*

---

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **CRUMBL LLC**, a Utah Limited Liability Company, **CRUMBL IP, LLC**, a Utah Limited Liability Company, and **CRUMBL FRANCHISING, LLC**, a Utah Limited Liability Company,<br><br>         Plaintiffs,<br><br>vs.<br><br>**DIRTY DOUGH LLC**, an Arizona Limited Liability Company, and **BRADLEY MAXWELL**, an individual.<br><br>         Defendant. | **FIRST AMENDED COMPLAINT**<br><br>Civil No. 2:22-cv-00318-DAK<br><br>Judge Dale A. Kimball<br><br><br>**JURY TRIAL DEMANDED** |

As their First Amended Complaint, Plaintiffs Crumbl LLC, Crumbl IP, LLC, and Crumbl Franchising, LLC, (collectively "Crumbl" or "Plaintiffs"), by and through their counsel, allege and complain against Defendant Dirty Dough LLC, ("Dirty Dough") and Defendant Bradley Maxwell (collectively Dirty Dough and Bradley Maxwell will sometimes be referred to as "Defendants") as follows:

## NATURE OF THE ACTION

1.      This is a civil action for misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq*., misappropriation of trade secrets under the Utah Uniform Trade Secrets Act ("UUTSA"), Utah Code Ann. § 13-24-1, *et seq*.; trademark infringement under the United States Trademark Act of 1946, as amended, 15 U.S.C. § 1051, *et seq*. (the "Lanham Act"), breaches of contract, and related claims under the laws of the State of Utah, and the common law. This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121and 28 U.S.C. § 1331 and 1338, as it involves claims arising under the Lanham Act.

2.      As set forth more fully herein, in late 2019, a Crumbl insider left Crumbl to found Dirty Dough, which sells and promotes cookies using packaging, decor, and presentation that is confusingly similar to Crumbl's established and successful trade dress and brand identity. Dirty Dough's unauthorized use of Crumbl's trade dress is an effort to trade on the valuable goodwill and reputation associated with Crumbl's trade dress, and is likely to cause confusion with regard to the affiliation or connection between Crumbl and Dirty Dough, and with regard to the source, sponsorship, or approval of Dirty Dough's products and services, all to Crumbl's harm and Dirty Dough's unjust enrichment. Moreover, Dirty Dough's misappropriation of Crumbl's trade dress is an intentional attempt to pass off its product as Crumbl's original, high-quality products by deceiving the relevant public and consumers.

3.      Among other remedies, Crumbl seeks injunctive and monetary relief for injuries that have been, and will continue to be, caused by Dirty Dough's unauthorized use of Crumbl's trade dress, in violation of the Lanham Act (15 U.S.C. §§ 1051, *et seq*.) and related Utah laws.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over the claims in this Complaint pursuant to 18 U.S.C.

§ 1836, 15 U.S.C. § 1125, and 28 U.S.C. §§ 1331, 1338, and 1367. Crumbl's claims are based on

violations of the Defend Trade Secrets Act and the Lanham Act.

5.     Upon information and belief, this Court has personal jurisdiction over Dirty Dough

because Defendant has established minimum contacts with this forum by virtue of the following:

(1) Dirty Dough ships its products into the State of Utah, (2) Dirty Dough knowingly committed

tortious acts aimed at, and causing harm within, the State of Utah, (3) the harm caused by the

actions alleged herein are felt in Utah and impacts the goodwill and reputation of Crumbl, a Utah

company, in Utah and beyond, and (4) the events giving rise to the claims asserted in this

Complaint have occurred and will continue to occur in the State of Utah. By virtue of these actions,

Dirty Dough has purposefully availed itself of the privilege of conducting business in this State

and in this judicial district.

6.     Venue is proper in this Court under 28 U.S.C. § 1391 because the parties transact

business in this District, because a substantial part of the events giving rise to Crumbl's claims

have occurred, and are occurring, within this District, and because the damage to Crumbl and its

intellectual property described herein has occurred and continues to occur in this District.

## THE PARTIES

7.     Plaintiff Crumbl LLC is a Utah limited liability company with its principal place of

business in Orem, Utah.

8.     Plaintiff Crumbl IP, LLC is a Utah limited liability company with its principal place

of business in Orem, Utah.

9.      Plaintiff Crumbl Franchising, LLC is a Utah limited liability company with its principal place of business in Orem, Utah.

10.      Upon information and belief, Defendant Dirty Dough, LLC is an Arizona limited liability company with its principal place of business in Tempe, Arizona.

11.      Upon information and belief, Defendant Bradley Maxwell is an individual residing in Provo, Utah.

<u>**GENERAL ALLEGATIONS**</u>

<u>**Crumbl's Business Model and Intellectual Property Rights**</u>

12.      Crumbl, which operates a unique gourmet cookie business, opened its first store in Logan, Utah, in 2017, and has seen explosive growth since then. Crumbl now has over 400 franchisee stores operating in 44 states, including multiple locations in and around the Phoenix, Arizona area, the first of which opened in in January 30, 2019, in Gilbert Arizona, and Crumbl's unique business is successful, popular, and expanding.

13.      To distinguish itself from competitors, Crumbl sells its gourmet cookies together with a unique trade dress and brand identity. Crumbl has invested substantial time and resources developing its trade dress brand identity, which has accrued substantial goodwill and brand recognition.

14.      Crumbl's business model is distinctive in several ways. In addition to its storefronts, Crumbl offers a delivery service for its scratch-made gourmet cookies, which are sold along with ice cream and other bakery items. Crumbl packages its cookies, still-warm, in its unique oblong pink boxes, the trade dress of which is registered as provided below, featuring its registered CRUMBL COOKIES Logo (as defined below). Customers enjoy a seamless ordering experience

on the Crumbl app or on iPads mounted to the kitchen walls in Crumbl's distinctive modern storefronts. Crumbl offers its timely cookie flavors through a weekly rotating menu, which customers keep up on through Crumbl's dynamic social media accounts and on Crumbl's website at www.crumblcookies.com, which Crumbl has operated since 2017.

### The Crumbl Trade Dress

15.    Long prior to the acts of Dirty Dough complained of herein, in connection with the operation of its website and the sale of its gourmet cookies, Crumbl commenced use of a distinctive trade dress on its product packaging and décor. Crumbl's unique product packaging and décor (referred to herein as the "Crumbl Trade Dress") includes, but is not limited to, the following unique and arbitrary features, individually or in combination with one another: cookie boxes with no extra space that perfectly fit cookies lying side-by-side, whimsical, outline-shaped drawings, including a cookie with a bite taken out of it, that appear on the cookie boxes and other product packaging and décor, a weekly rotating menu available on Crumbl's website and other digital assets, a drawing in the shape of a cookie with a bite taken out of it, and the color pink.

16.    Examples of the Crumbl Trade Dress are provided below:

| **Element of Trade Dress** | **Examples** |
| --- | --- |
| Decorative graphics appearing as outline-shaped drawings of a cookie with a bite taken out of it on Crumbl packaging and décor |      |

Whimsical, outline-shaped drawings on product packaging, presentation, and décor

 



Cookie boxes with no extra space that perfectly fit cookies lying side-by-side

 

 



Weekly rotating menu

   

# The Weekly Rotating Menu

Crumbl's rotating menu features 200+ flavors that are inspired by cakes, candies, pies, and desserts of all kinds. These flavors rotate weekly and keep customers coming back every week to try brand new flavors, stock up on returning favorites, or rediscover our classics.

17.     Crumbl's Crumbl Trade Dress is used in connection with Crumbl's advertising and promotional materials, on Crumbl's product packaging and décor, on Crumbl's website and social media accounts, and in its storefronts.

18.     Crumbl has expended considerable time and resources to create and develop its unique Crumble Trade Dress in connection with the operation of its website, social media accounts, and storefronts, and with the sale of its cookies.

19.     Crumbl's significant expenditures and sacrifices, including in developing and promoting its Crumbl Trade Dress, have resulted in the success it now enjoys. Crumbl's efforts and accomplishments have contributed to its reputation and goodwill, making its Registered Trademarks (defined below) and the Crumbl Trade Dress well-known and recognized across the nation. Crumbl enjoys success and a highly regarded reputation in its field due in large part to its use of, and rights in, its trade dress and marks.

20.     Crumbl's Crumbl Trade Dress is inherently distinctive, and, due to Crumbl's substantial and significant sales, advertising, promotion, and publicity, Crumbl's Trade Dress is recognized as emanating from or being associated with Crumbl. Members of the consuming public recognize the Crumbl Trade Dress as an indicator of a high quality product associated with Crumbl.

**Crumbl's Registered Trademarks**

21.     In addition to its rights in the Crumbl Trade Dress, Crumbl has registered the following federal trademarks and trade dress:

(a)     U.S. Reg. Number 5,855,051 (attached as **Exhibit A** hereto), filed August 29, 2018, and registered September 10, 2019, for its CRUMBL COOKIES logo:



(The "CRUMBLE COOKIES Logo").

(b)     U.S. Reg. Number 5910669 (attached as **Exhibit B** hereto), filed February 22, 2018, and registered November 12, 2019, for the word "Crumbl"; and

(c)     U.S. Reg. Number 6305598 (attached as **Exhibit C** hereto), filed August 7, 2020, and registered March 30, 2021, for the design of its CRUMBL COOKIES packaging:



Collectively, the foregoing trademark registrations, which are owned by Crumbl, will be referred to herein as the "Registered Trademarks."

22.     As a result of Crumbl's continuous use of the Registered Trademarks and the Crumbl Trade Dress, including advertising and selling services under the same, the Registered Marks and Crumbl Trade Dress have become assets of substantial value to Crumbl as a distinctive indication of the origin and quality of its services. Crumbl uses the Registered Trademarks and Crumbl Trade Dress in interstate commerce in connection with the sale and advertising of its cookies and other services nationwide.

23.     Crumbl enforces its rights in its Crumbl Trade Dress and Registered Trademarks to ensure its continued success and excellent reputation.

**Crumbl's Party Box Artwork Copyright**

24.     On or about June 9, 2020, Crumbl filed with the United States Copyright Office an application to register a copyright for its party box artwork, which Crumbl first published in September of 2018.  A true and correct copy of Crumbl's application is attached hereto as **Exhibit D**.

25.     The Copyright Office issued Registration Number VA 2-210-318 for Crumbl's party box artwork (the "Party Box Artwork Copyright").  A true and correct copy of the Certificate of Registration for the Party Box Artwork Copyright is attached hereto as **Exhibit E**.

26.     Crumbl's Party Box Artwork Copyright is represented below:



**<u>Crumbl's Trade Secrets</u>**

27.     Crumbl also uses and maintains confidential and trade secret information in its business, including, but not limited to, (i) cookie recipes, mixes, and ingredients, (ii) food preparation methods, formulas, and processes, (iii) manuals and techniques, and (iv) methods and formulas for the operation of Crumbl franchise businesses.

28.     At all times, Crumbl has taken reasonable and appropriate measures to maintain the confidentiality of and to protect is proprietary information.

29.     Among other things, Crumbl requires its franchises and employees to enter into non-disclosure and confidentiality agreements to protect its confidential information and trade

secrets.

30.     Crumbl also keeps its proprietary information on secure servers and limits access
to that information.

**Dirty Dough's Unfair Competition and Its Unauthorized
Copying, Exploitation, and Use of Crumbl's Trade Dress**

31.     After years of Crumbl's extensive sales of its gourmet cookies in connection with
the Crumbl Trade Dress and Registered Marks, Dirty Dough began offering the exact same type
of product for sale to substantially the same consumers.

32.     Upon information and belief, Dirty Dough's business was purchased in Arizona in
May of 2019, by Bennett Maxwell and his brother, Bradley Maxwell, a former employee of
Crumbl.

33.     Upon information and belief, Dirty Dough opened its first cookie store in Tempe,
Arizona, in March of 2020.

34.     Dirty Dough operates a website at www.dirtydoughcookies com and also promotes
its cookies on its social media accounts.

35.     Dirty Dough and Crumbl directly compete with one another in the marketplace for
gourmet cookies. Dirty Dough sells cookies which are in the same class of goods under which
Crumbl's Registered Trademarks are registered, and Dirty Dough's cookie packaging, décor, and
presentation is remarkably similar to, and mimics, Crumbl's Crumbl Trade Dress.

36.     Specifically, and as shown below, Dirty Dough's logo includes a stylized cookie
image with a bite out of it similar to that used in Crumbl marketing materials, its marketing images
are similar to Crumbl's in both expression and look and feel, its cookies are dressed in a manner
that imitates Crumbl cookies, and its packaging is confusingly similar to Crumbl's packaging.

37.     Furthermore, the parties distribute their offerings through the same channels, including the parties' respective storefronts, websites, and social media accounts. The parties both offer a cookie delivery service as well as nationwide cookie shipping.

38.     The problem for Dirty Dough, however, is that at the time it began operating a cookie business substantially similar to Crumbl's business, Crumbl had already been operating its gourmet cookie business, including under the Registered Marks and the Crumbl Trade Dress, for years.

39.     Defendant's intent to copy all aspects of Crumbl's business even extends to how it decorates and photographs its cookies. For example, the following screenshots show the parties' respective Facebook profiles:





40.     Further, the following are side-by-side screenshots showing images of the parties'

respective cookie presentation and décor:







 

41.     In addition to copying Crumbl's cookie presentation and décor, Dirty Dough has also copied Crumbl's logo. Dirty Dough's logo includes a cookie with a bite out of it that is substantially similar to the cookie in Crumbl's logo and marketing:

 

42.     Dirty Dough's marketing and packaging also includes the same type of whimsical, drawings in outline form that is a staple of Crumbl's marketing and packaging:







43.     Moreover, as shown by the screenshots below, Dirty Dough packages its cookies in a row in boxes that mimics Crumbl's registered trade dress and iconic packaging:










44.     The artwork on Dirty Dough's cookie boxes shown in the photos above is thematically and conceptually similar to Crumbl's Party Box Artwork Copyright and is indicative of Dirty Dough's bad faith intent to build its business on Crumbl's goodwill.

45.     Finally, Dirty Dough has also copied Crumbl's unique weekly rotating menu concept:

 

46.     As shown by these screenshots, Dirty Dough provides substantially similar products and services to the same group of cookie-loving consumers as does Crumbl, markets its products the same way as Crumbl does, and copies Crumbl's product packaging and décor.

47.     Dirty Dough's product packaging, décor, and presentation is substantially similar to Crumbl's Crumbl Trade Dress. Specifically, Dirty Dough (1) packages its cookies in boxes that perfectly fit cookies lying side-by-side, and that include whimsical, outline-shaped drawings, including a cookie with a bite taken out of it, (2) has a weekly rotating menu, and (3) includes a drawing in the shape of a cookie with a bite taken out of it in its décor and marketing. Dirty Dough's infringing trade dress will be referred to herein as the "Infringing Trade Dress."

48.     Upon information and belief, the similarity between the parties' trade dress, business models, product offerings, and marketing is no coincidence.

49.     In or around March of 2019, Bennett Maxwell applied to be a franchise salesman for Crumbl. Although Crumbl considered Bennett Maxwell for this position, Crumbl ultimately did not hire him.

50.     Upon information and belief, Bennett Maxwell remained interested in the cookie business thereafter and continued to watch Crumbl's business and saw the popularity of Crumbl Cookies.

51.     Upon information and belief, in or around May of 2019, Bennett Maxwell purchased Dirty Dough.

52.     Prior to Bennett Maxwell's purchase of Dirty Dough, it was doing delivery only without a storefront.

53.     Bennett Maxwell publicly holds himself out as the "founder" of Dirty Dough.

54.     Upon information and belief, Bennett Maxwell and Bradley Maxwell, who are brothers, lived in Orem, Utah, at the time that Bennett Maxwell purchased Dirty Dough.

55.     Bradley Maxwell also acquired an ownership interest in Dirty Dough and, upon information and belief, as of May 2019, Bennett Maxwell and Bradley Maxwell each owned a 15% equity stake in Dirty Dough.

56.     Upon information and belief, as of May 2019 when the two brothers held ownership interests in Dirty Dough, they were no strangers to Crumbl and its business model and intellectual property.

57.     In addition to Bennett Maxwell seeking to be a Crumbl franchise salesman prior to his purchase of Dirty Dough, Bradley Maxwell was also familiar with Crumbl.

58.     Upon information and belief, prior to May of 2019, Bradley Maxwell applied to buy a Crumbl franchise but did not finalize the purchase.

59.     From on or about March 29, 2019 through June 14, 2019, Crumbl employed Bradley Maxwell as a process engineer at Crumbl Franchising, LLC.

60.     Thus, at the time that Bennett and Bradley Maxwell obtained an ownership stake in Dirty Dough, Bradley Maxwell was a process engineer at Crumbl.

61.     In his role at Crumbl, Bradley Maxwell was exposed to and became familiar with Crumbl's business model, marketing, brand identity, and the Crumbl Trade Dress.

62.     Upon information and belief, while employed by Crumbl, Bradley Maxwell had access to Crumbl's confidential business information, including but not limited to mixes, recipes, spices, processes, methods, and formulas.

63.     Bradley Maxwell signed three agreements in connection with his employment as process engineer at Crumbl.

64.     On or about March 29, 2019, Bradley Maxwell entered into an Employee Confidentiality and Non-Competition Agreement with Crumbl Franchising, LLC (the "Confidentiality Agreement"). A true and correct copy of the Confidentiality Agreement is attached hereto as **Exhibit F**.

65.     On or about March 29, 2019, Bradley Maxwell also entered into an Employee Confidential Recipe Agreement with Crumbl Franchising, LLC (the "Confidential Recipe Agreement"). A true and correct copy of the Confidential Recipe Agreement is attached hereto as **Exhibit G**.

66.     In the Confidentiality Agreement and the Confidential Recipe Agreement, Bradley

Maxwell acknowledged that during the course of his employment with Crumbl he would have or may have access to Crumbl's confidential information.

67.     Among other things, in each of the agreements, Bradley Maxwell agreed that he would not, during the course of his employment with Crumbl or thereafter, directly or indirectly, use or disclose to any third party, or authorize any third party to use, any of Crumbl's confidential information.

68.     Upon information and belief, the fact that the Dirty Dough business was purchased in or around May of 2019 by a former Crumbl employee and that employee's brother who previously sought a position with Crumbl, shows that Dirty Dough was clearly aware of Crumbl and its Crumbl Trade Dress when it commenced use of the Infringing Trade Dress.

69.     Bradley Maxwell's last day as a Crumbl employee was on or around June 14, 2019.

70.     Upon information and belief, prior to Bradley Maxwell's departure from Crumbl, he took or downloaded confidential information belonging to Crumbl.

71.     Upon information and belief, Bradley and Bennett Maxwell appropriated an aesthetic and trade dress similar to Crumbl's branding and the Crumbl Trade Dress with the intent to benefit and profit from the wide-spread name recognition and goodwill Crumbl has built in its marks and trade dress.

72.     Upon information and belief, Dirty Dough deliberately adopted the Infringing Trade Dress knowing and intending that the relevant public, including consumers, would likely be confused, thereby unfairly diverting sales from Crumbl to Dirty Dough.

73.     As the similarities and crossover in the parties' business models and branding indicate, Dirty Dough's use of the Infringing Trade Dress creates a substantial likelihood of

consumer confusion or mistake regarding the affiliation, connection, or association of Crumbl with Dirty Dough, and may cause consumers to mistakenly believe that Crumbl owns or has sponsored or approved Dirty Dough's cookie business.

74.     In the summer of 2022, a former Dirty Dough employee advised Crumbl that Dirty Dough had confidential information belonging to Crumbl, including, among other things, Crumbl's confidential cookie recipes.

75.     Upon information and belief, in violation of his contractual obligations, Bradley Maxwell disclosed Crumbl's confidential information to Dirty Dough.

76.     Upon information and belief, Bennett Maxwell and/or Bradley Maxwell instructed Dirty Dough employees to use Crumbl's recipes to create and develop Dirty Dough cookies.

**FIRST CLAIM FOR RELIEF**
**(Trade Dress Infringement, Unfair Competition, and False**
**Designation of Origin under § 43 of the Lanham Act, 15 U.S.C. § 1125(a) (Against Dirty**
**Dough)**

77.     Plaintiffs repeat, reallege, and incorporate each of the foregoing allegations as if fully set forth herein.

78.     Crumbl has been using the Crumbl Trade Dress since 2017 in connection with the promotion, offering for sale, sale, and distribution of its gourmet cookies and associated services.

79.     Crumbl's Crumbl Trade Dress is entitled to protection because it is inherently distinctive and non-functional and/or it has acquired distinctiveness.

80.     Dirty Dough uses the following Infringing Trade Dress in its copycat cookie business: (1) cookie boxes that perfectly fit cookies lying side-by-side, and that include whimsical, outline-shaped drawings, including a cookie with a bite taken out of it, (2) a weekly rotating menu, and (3) a drawing in the shape of a cookie with a bite taken out of it in its décor and marketing.

81.     In addition, Dirty Dough has also copied Crumbl's logo. Dirty Dough's logo includes a cookie with a bite out of it that is substantially similar to the cookie in Crumbl's logo and marketing:




82.     Dirty Dough's use of the Infringing Trade Dress constitutes false designation of origin or sponsorship of Dirty Dough's products and tends to falsely represent that Dirty Dough's products and services originate from Crumbl or that Dirty Dough's products and/or Dirty Dough have been sponsored, approved, or licensed by Crumbl or are in some way affiliated or connected with Crumbl.

83.     Dirty Dough's conduct is likely to confuse, mislead, and deceive Dirty Dough's customers, purchasers, and members of the public as to the origin of Dirty Dough's products or cause said persons to believe that Dirty Dough's products and/or Dirty Dough has been sponsored, approved, authorized, or licensed by Crumbl or are in some way affiliated or connected with Crumbl in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

84.     Upon information and belief, Dirty Dough's conduct was and is willful and intentional.

85.     Dirty Dough was aware of Crumbl's Crumbl Trade Dress when it committed its acts of infringement and, upon information and belief, intended to profit from and appropriate the goodwill and name recognition Crumbl has established in the Crumbl Trade Dress.

86.     Upon information and belief, Dirty Dough intends to cause confusion and mistake and intend to deceive the buyers of its services and products into believing that they are buying products or services produced by, marketed by, sponsored by, approved of, or licensed by Crumbl.

87.     As a direct and proximate result of the foregoing acts, practices, and conduct, Crumbl has been or is likely to be substantially injured in its business, including its reputation by Dirty Dough's infringement of the Crumbl Trade Dress, resulting in diminished goodwill and reputation, and lost revenue and profits.

88.     Defendant will, if not enjoined by this Court, continue its acts of trademark infringement as set forth above. Such improper acts have caused and will continue to cause Crumbl immediate and irreparable harm.

89.     By virtue of the foregoing, and pursuant to Section 34 of the Lanham Act (15 U.S.C. § 1116), Crumbl is entitled to an order of this Court enjoining Defendant its officers, agents, assigns, and employees from using Crumbl's Crumbl Trade Dress or any other confusingly similar trade dress or marks in the advertising, marketing, or sale of products or services from Defendant.

90.     By virtue of the foregoing, Crumbl has suffered damages, the exact amount of which it has not yet been able to determine, and is entitled to recover Defendant's profits, sustained damages and its costs under 15 U.S.C. § 1117.

91.     By reason of the foregoing, and pursuant to Section 35 of the Lanham Act (15 U.S.C. § 1117), Defendant's conduct is and has been exceptional and Crumbl is also entitled to

injunctive relief, attorneys' fees, and treble damages, together with interest thereon, in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
### (Utah Deceptive Trade Practices, U.C.A. §§ 13-11a-3 and 13-11a-4) (Against Dirty Dough)

92.     Plaintiffs repeat, reallege, and incorporate each of the foregoing allegations as if fully set forth herein.

93.     The foregoing conduct and actions of Dirty Dough described above, including, without limitation, Dirty Dough's infringement of the Crumbl Trade Dress, are likely to cause confusion or misunderstanding among purchasers as to the source, sponsorship, approval, or certification of goods in commerce or to cause confusion or misunderstanding as to the affiliation, connection, or association between Crumbl and Dirty Dough, and such conduct and acts therefore constitute deceptive trade practices in violation of the provisions of Utah Code Annotated, Section 13-11a-3.

94.     As a direct and proximate result of the foregoing acts, practices, and conduct, Crumbl has been or is likely to be substantially injured in its business, including its reputation, by Dirty Dough's use and infringement of the Crumbl Trade Dress resulting in lost revenues and profits, and diminished goodwill and reputation.

95.     Crumbl has no adequate remedy at law, because the harm caused to Crumbl's goodwill and reputation by Dirty Dough's willful conduct can never be fully remedied with an award of money damages. Dirty Dough's willful misconduct constitutes a blatant attempt to trade upon and, thereby, to injure Crumbl's unique and valuable commercial identity and should be enjoined by the Court.

96.     Unless enjoined by the Court, Dirty Dough will continue to use and infringe Crumbl's intellectual property to Crumbl's irreparable injury. This threat of continuing injury to Crumbl's business identity, goodwill, and reputation requires injunctive relief to prevent such infringement and to ameliorate and mitigate Crumbl's injury.

97.     Accordingly, Crumbl is entitled to injunctive, monetary relief, costs, and attorneys' fees against Dirty Dough pursuant to Section 13-11a-4(2).

**THIRD CLAIM FOR RELIEF**
**(Utah Unfair Competition Act, U.C.A. § 13-5a-101, *et seq*.) (Against Dirty Dough)**

98.     Plaintiffs repeat, reallege, and incorporate each of the foregoing allegations as if fully set forth herein.

99.     Dirty Dough has used and continues to use the Infringing Trade Dress in connection with the sale, offering for sale, distribution, and promotion of its products and services in such a manner as to misrepresent the source, sponsorship, and approval of Dirty Dough's products and services. These actions were and are intentional, unfair, and infringe upon Crumbl's Crumbl Trade Dress and common law marks.

100.     Dirty Dough's unauthorized use of the Infringing Trade Dress falsely suggests that such branded goods and services are connected with, sponsored by, affiliated with, related to, and/or approved by Crumbl.

101.     Dirty Dough has acted with knowledge of Crumbl's Crumbl Trade Dress and with the intention of unfairly benefiting from the goodwill symbolized by that mark.

102.     Dirty Dough's acts constitute unfair competition and unfair business practices under Utah's Unfair Competition Act, Utah Code Ann. § 13-5a-101 *et seq*.

103.     Dirty Dough's actions have led to a material diminution in value of the Crumbl

Trade Dress and intellectual property.

104.    Crumbl has been injured by Dirty Dough's misconduct.

105.    Pursuant to Utah Code Ann. § 13-5a-103, Crumbl is entitled to recover damages, costs, attorneys' fees, and punitive damages from Dirty Dough for its unfair competition.

## FOURTH CLAIM FOR RELIEF
### (Unjust Enrichment) (Against Dirty Dough)

106.    Plaintiffs repeat, reallege, and incorporate each of the foregoing allegations as if fully set forth herein.

107.    Dirty Dough has knowingly misused the Crumbl Trade Dress to derive profit and otherwise has been enriched as a result of the benefits and goodwill which flow from the Crumbl Trade Dress.

108.    It would be unjust for Dirty Dough to retain the profits, gains, and other benefits that it has derived from its illegal use of the Infringing Trade Dress.

109.    Dirty Dough should be required to pay to Crumbl the value of the benefits gained through the unauthorized and unlawful use of the Infringing Trade Dress.

## FIFTH CLAIM FOR RELIEF
### (Misappropriation of Trade Secrets Under Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*) (Against Dirty Dough and Bradley Maxwell)

110.    Plaintiffs repeat, reallege, and incorporate each of the foregoing allegations as if fully set forth herein.

111.    Crumbl has developed information, methods, and techniques that derive independent economic value, both actual and potential, from not being generally known to or readily ascertainable by other persons who can obtain economic value from its disclosure or use, including but not limited to recipes, processes, methods, formulas, and manuals.

112.    Crumbl's trade secrets constitute legally-recognized trade secrets and proprietary and confidential information protected under federal law, and more particularly, the Defend Trade Secrets Act, as defined under 18 U.S.C. § 1839.

113.    Crumbl's confidential, proprietary, and trade secret information relates to Crumbl's products and services used or sold in, or intended to be used or sold in, interstate commerce.

114.    Crumbl's trade secret information is not available to the public and would provide a competitor with an unfair economic advantage if disclosed.

115.    Crumbl has taken reasonable efforts to maintain the secrecy of its confidential information and trade secrets.

116.    In violation of Crumbl's rights, Dirty Dough and Bradley Maxell knowingly misappropriated Crumbl's confidential, proprietary, and trade secret information in the unlawful manner as alleged herein.

117.    Upon information and belief, as a direct and proximate result of the above-described actual or threatened misappropriation, Crumbl has suffered and will continue to suffer substantial and irreparable damage, the full extent of which has not yet been determined and which will be established by proof at the time of trial.

118.    Pursuant to the Utah Uniform Trade Secrets Act, Crumbl is entitled to recover from Dirty Dough monetary damages sustained as a result of any actual misappropriation of Crumbl's trade secret information, including both the actual loss caused by the misappropriation and the unjust enrichment resulting from the misappropriation that is not taken into account in computing actual loss.

119.    Upon information and belief, Crumbl alleges that the misappropriation of its

confidential information and trade secrets was willful and malicious; accordingly, pursuant to the Utah Uniform Trade Secrets Act, the Court should award exemplary damages against Dirty Dough in an amount not to exceed twice any award of compensatory damages and/or award of damages for unjust enrichment; additionally, pursuant to the Utah Uniform Trade Secrets Act, the Court should award Crumbl its reasonable attorneys' fees.

### SIXTH CLAIM FOR RELIEF
**(Misappropriation of Trade Secrets under Utah Uniform Trade Secrets Act, Utah Code Ann. § 13-24-1, *et seq.*) (Against Dirty Dough and Bradley Maxwell)**

120.    Plaintiffs repeat, reallege, and incorporate each of the foregoing allegations as if fully set forth herein.

121.    Crumbl owns and possesses confidential and trade secret information, as alleged above.

122.    Crumbl's trade secrets constitute legally-recognized trade secrets and proprietary and confidential information protected under Utah law, Utah Code Ann. § 13-24-1, *et seq.*

123.    Crumbl has taken reasonable efforts to maintain the secrecy of its confidential information and trade secrets.

124.    Crumbl's proprietary and confidential information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by another person who could obtain economic value from the disclosure or use of the information.

125.    In violation of Crumbl's rights, Defendants willfully misappropriated Crumbl's trade secrets.

126.    Defendants' misappropriation of Crumbl's trade secret information has been intentional, knowing, willful, malicious, fraudulent, and oppressive.

127.     If Defendants' conduct is not remedied, they will continue to misappropriate, disclose, and use Crumbl's trade secret information for their own benefit and to Crumbl's detriment.

128.     Because Crumbl's remedy at law is inadequate, Crumbl seeks, in addition to monetary damages, permanent injunctive relief to recover and protect its trade secrets and other legitimate business interests.

129.     As the direct and proximate result of Defendants' conduct, Crumbl has suffered and will continue to suffer irreparable injury and significant damages, in an amount to be proven at trial.  Crumbl seeks all remedies available under the UUTSA, including but not limited to both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation.

130.     Crumbl has been damaged by the foregoing and is also entitled to an award of exemplary damages and attorneys' fees.

**SEVENTH CLAIM FOR RELIEF**
**(Breach of Contract) (Against Bradley Maxwell)**

131.     Plaintiffs repeat, reallege, and incorporate each of the foregoing allegations as if fully set forth herein.

132.     Bradley Maxwell worked at Crumbl from approximately March of 2019 through on or about June 14, 2019.

133.     On or about March 29, 2019, Bradley Maxwell entered into the Confidentiality Agreement and the Confidential Recipe Agreement as part of his employment with Crumbl.

134.     The Confidentiality Agreement and the Confidential Recipe Agreement required, among other things, that Bradley Maxwell would not disclose, directly or indirectly, during his employment or thereafter, Crumbl's confidential information to third parties.

135. Bradley Maxwell also agreed that immediately upon the termination of his employment with Crumbl, he would deliver to Crumbl, and would not keep in his possession or deliver to anyone else, Crumbl's confidential information.

136. During his employment with Crumbl, Bradley Maxwell had access to, obtained, or received Crumbl's confidential and trade secret information for at least an approximately four-month period in 2019.

137. Despite Bradley Maxwell's confidentiality and non-disclosure obligations to Crumbl, Bradley Maxwell disclosed Crumbl's confidential information to Dirty Dough.

138. Upon information and belief, Bradley Maxwell knew that disclosing this information to Dirty Dough was a violation and breach of his contractual obligations to Crumbl.

139. As a result of these actions, Bradley Maxwell willfully and intentionally breached the Confidentiality Agreement and the Confidential Recipe Agreement with Crumbl.

140. Crumbl fully complied with its obligations under the Confidentiality Agreement and the Confidential Recipe Agreement.

141. As a direct and proximate result of Bradley Maxwell's material breaches of the Confidentiality Agreement and the Confidential Recipe Agreement, Crumbl has suffered and will continue to suffer irreparable injury and damages, in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Crumbl demands judgment in its favor against Dirty Dough as follows:

1. Enjoining Defendants, and all other persons participating or acting in concert with them, from all acts of trade secret misappropriation, trade dress infringement, unfair competition, breach of contract, and/or any other wrongful conduct alleged in this First Amended Complaint;

2.      An order from the Court directing Dirty Dough to provide an accounting of all revenues and profits gained by Dirty Dough while engaging in the acts complained of in this Complaint;

3.      Awarding Plaintiffs their actual damages and any additional damages that the Court deems just and equitable under the circumstances;

4.      Awarding Plaintiffs treble damages and attorneys' fees for Defendant's deliberate and willful misconduct;

5.      Awarding Plaintiffs their attorneys' fees;

6.      Awarding Plaintiffs prejudgment and post-judgment interest;

7.      Awarding Plaintiffs allowable costs; and

8.      Awarding Plaintiffs such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs request a trial by jury for all issues so triable pursuant to Fed. R. Civ. P. 38(b) and 38(c) and under the United States Constitution.

DATED this 3rd day of August, 2022.          Dorsey & Whitney LLP


By: */s/ Tamara L. Kapaloski*
Case Collard (admitted pro hac vice)
Tamara L. Kapaloski (#13471)

*Attorneys for Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 3, 2022, the foregoing document was electronically filed with the CM/ECF system of the U.S. District Court for the District of Utah. The CM/ECF system sent a Notice of Electronic Filing to the attorneys of record.

*/s/ Tamara L. Kapaloski*