Douglas P. Farr (13208)
Jack Darrington (18349)
**BUCHALTER, A Professional Corporation**
60 E. South Temple, Suite 1200
Salt Lake City, UT  84111
Email:  dfarr@buchalter.com
Email:  jdarrington@buchalter.com

*Attorneys for Defendant Dirty Dough, LLC*

---

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **CRUMBL LLC**, a Utah limited liability company, **CRUMBL IP, LLC**, a Utah limited liability company, and **CRUMBL FRANCHISING, LLC**, a Utah limited liability company,<br><br>    Plaintiffs,<br><br>vs.<br><br>**DIRTY DOUGH LLC**, an Arizona limited liability company, and **BRADLEY MAXWELL**, an individual,<br><br>    Defendants. | **DEFENDANT DIRTY DOUGH'S SHORT FORM DISCOVERY MOTION TO COMPEL PLAINTIFFS' DOCUMENT PRODUCTION IN RESPONSE TO DISCOVERY REQUESTS**<br><br>Civil No.: 2:22-cv-00318-HCN-CMR<br><br>Judge Howard Nielson, Jr.<br><br>Magistrate Judge Cecilia M. Romero<br><br>(Oral Argument Requested) |

Pursuant to Rules 34 and 37, and DUCivR 37-1, Dirty Dough LLC ("**Dirty Dough**"),

moves to compel Crumbl LLC, Crumbl IP, LLC, and Crumbl Franchising, LLC (collectively,

"**Crumbl**") to produce documents in response to written discovery requests ("**Requests**"). The

Requests and Crumbl's responses are attached as **Exhibits A and B**.

RFP No. 2: Dirty Dough requested documents and communications between Crumbl and third-parties discussing Dirty Dough, Bennett Maxwell, or Bradley Maxwell. Crumbl made an incomplete production. Dirty Dough certifies that on August 31, 2023 it sent a letter addressing Crumbl's deficient responses ("**Letter**", which is attached as **Exhibit C**). On September 5, the parties had a telephonic meet-and-confer to try and resolve these deficiencies. Crumbl indicated it would supplement its production or its responses. Subsequently, Crumbl served supplemental productions, but remain deficient as follows:

1.      Crumbl has not produced additional correspondence between bacongoddess101221@gmail.com and Savannah Merrill or provided confirmation that no other communications took place.

2.      Crumbl has not produced the "CEO Dirty Dough conquest recommendation" document that Zach Lederman referenced in an email to Crumbl.

3.      Crumbl produced a partial communication between Britnee Neuhring and George Banner titled "#pr_sos", but not the entire communication thread.

4.      Crumbl produced Dirty Dough's signage and advertising specifications it received from Sign Design Lab, but not the related communications.

Crumbl should be compelled to fully and completely respond to RFP 2.

RFP No. 6: Dirty Dough requested the documents and communications Crumbl produced in the lawsuit it filed against Crave Cookies. *See* Case No. 2:22-cv-00319, U.S. District Court, District of Utah ("**Crave Lawsuit**"). Crumbl objected claiming that the information sought was irrelevant, unlikely to lead to discovery of admissible evidence, and overly broad / unduly burdensome.

Dirty Dough addressed Crumbl's objections in the Letter and over the phone, and Crumbl indicated it would stand on its objections. RFP 6 requests relevant information because Crumbl initiated this lawsuit and the Crave Lawsuit on the same day, and in the same court. A simple review of the complaints filed in both matters reveals related issues and motivations. Here, one of Dirty Dough's defenses is that Crumbl's trade dress and trademark infringement claims were filed to quash its competition, not to protect itself. Accordingly, this request seeks relevant and discoverable information.

Moreover, there is little burden and no undue prejudice here. Crumbl already reviewed and produced these documents in the Crave Lawsuit, and it will take little effort to duplicate the production. During discovery in this case, Dirty Dough discovered text messages from Crumbl's founder(s) that were produced in the Crave Lawsuit and included as exhibits to Crumbl's deposition transcript in that case. But Crumbl has refused to produce any of the remaining text messages produced in the Crave Lawsuit. There is a protective order in this case that provides additional protection for Crumbl. RFP 6 seeks relevant information and Crumbl should be compelled to fully and completely produce responsive documents.

DATED: October 11, 2023

**BUCHALTER, A Professional Corporation**


*/s/ Douglas P. Farr*
Douglas P. Farr
Jack Darrington


*Attorneys for Defendant Dirty Dough LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused a true and correct copy of the foregoing to be served on all counsel of record via the Court's CM/ECF system.

*/s/ Douglas P. Farr* _____

BN 77841081v2

# EXHIBIT A

Douglas P. Farr (13208)
Jake D. Barney (16777)
Jack Darrington (18349)
**BUCHALTER, A Professional Corporation**
60 E. South Temple, Suite 1200
Salt Lake City, UT  84111
dfarr@buchalter.com
jbarney@buchalter.com
jdarrington@buchalter.com

*Attorneys for Defendant Dirty Dough, LLC*

---

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **CRUMBL LLC**, a Utah Limited Liability Company, **CRUMBL IP, LLC**, a Utah Limited Liability Company, and **CRUMBL FRANCHISING, LLC**, a Utah Limited Liability Company,<br><br>          Plaintiff,<br><br>vs.<br><br>**DIRTY DOUGH LLC**, an Arizona Limited Liability Company, and **BRADLEY MAXWELL**, an individual,<br><br>          Defendants. | **DEFENDANT DIRTY DOUGH'S FIRST SET OF WRITTEN DISCOVERY REQUESTS**<br><br>Civil No.: 2:22-cv-00318-HCN-CMR<br><br>Judge Howard Nielson, Jr.<br><br>Magistrate Judge Cecilia M. Romero |

Pursuant to Rules 26, 33, 34, and 36 of the Federal Rules of Civil Procedure, Defendant

Dirty Dough LLC ("**Dirty Dough**"), by and through its counsel of record and, hereby propounds

the following First Set of Interrogatories, Requests for Production of Documents, and Requests for

Admission upon Plaintiffs Crumbl LLC, Crumbl IP, LLC, and Crumbl Franchising, LLC, to be

responded to in full, under oath and in writing, with a copy of the responses to be delivered to

Dirty Dough's counsel within thirty (30) days after service of these discovery requests. Any request for admission not responded to within 30 days of service shall be deemed admitted, pursuant to Rule 36(a)(3).  These discovery requests shall be deemed continuing in nature, with supplementary responses to be served in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

<u>**DEFINITIONS**</u>
<u>**(APPLICABLE TO ALL DISCOVERY REQUESTS)**</u>

1.      <u>Identify</u>. The term "identify" when used with reference to individuals or business entities shall mean and require you to state with regard to each individual or entity so designated:

      a.      The name of the individual or business entity;

      b.      The present business and home addresses and telephone numbers of the individual or business entity; and

      c.      The individual's present employer.

2.      <u>Identify</u>. The term "identify" when used with reference to the term "document" or "documents" shall require you to state with regard to each document so designated:

      a.      The date of the document;

      b.      A description of the document in sufficient detail to enable it to be specifically identified;

      c.      The name of the author of the document;

      d.      The name and business address of the person presently having custody of the document;

      e.      The name and business address of each person having knowledge of any factual assertions reflected in such documents;

f.      The name of each recipient of the document; and

g.      A statement explaining in reasonable detail the contents of the document.

3.      <u>Document</u>. The term "document" shall mean any original and/or non-identical duplicate writing, recording, or photograph, as defined in both Utah Rule of Evidence 1001 and Federal Rule of Evidence 1001, including without limitation, any kind of handwritten, typewritten, printed, electronic, or recorded material of any nature whatsoever, including, without limitation, the original, or absent any original, a copy of: contracts, agreements, and exhibits, attachments, addenda, amendments, x-rays or modifications thereto; memoranda; notes; inter- and intra-office communications; correspondence; letters; facsimiles; electronic mailings; telegrams; text messages; data; spreadsheets; schedules; reports; invoices; statements of account, billings, accounts, and ledgers; records; log books; checks, wires, or payments of any kind; diaries; minutes; memoranda of telephonic or personal communications; tape recordings and any other audio recordings; films; prints; negatives; video recordings or videotapes; transcription of recordings; bulletins; notices; instruments; drawings, plans, and specifications; and any other written, printed, electronic, or recorded matter of any character or medium whatsoever in the possession, care, custody, or control of you or your attorneys, agents, or other persons, companies or entities under any of the foregoing's control. **Each document needs to be produced in exact conformance to the original and any electronically stored information needs to be produced in *native format*.**

4.      <u>Communication</u>. The term "communication," its plural or synonym thereof, is intended to and shall embrace and include all communications, written, oral, electronic or otherwise, and with respect to all communications, shall include but not be limited to every discussion, conversation, conference, meeting, interview, letter, email, text message, or telephone call.

5.      Electronic Storage Device. The term "electronic storage device" shall mean any device for recording electronic data, such as computers, hard drives, servers, tablets, thumb drives, disks, or other similar items.

6.      E-mail. The term "e-mail" shall mean any transmission of information by electronic or telecommunication equipment. Any Interrogatory herein specifically includes all such electronic forms of communication.

7.      Person. The term "person" includes all natural persons, as well as artificial persons of any kind, including corporations, unincorporated associations or other groups separately identified, no matter how organized.

8.      Relate To. The term "relate to" shall mean relate to, refer to, discuss, comprise, constitute, summarize, result from, connected with or to, and disclose.

9.      Including. The term "including" shall mean including but not limited to.

10.     And and Or. The terms "and" and "or" shall be construed disjunctively or conjunctively as necessary, in order to bring within the scope of the Interrogatories and Requests all answers and responses which might otherwise be construed outside of its scope.

11.     You, Your, Defendant, or Crumbl. The terms "you," "your," "Plaintiffs," or "Crumbl" shall mean, collectively, CRUMBL LLC, a Utah Limited Liability Company, CRUMBL IP, LLC, a Utah Limited Liability Company, and CRUMBL FRANCHISING, LLC, a Utah Limited Liability Company, and any of its agents, employees, managers, attorneys, management companies, shareholders, affiliates, or representatives, individually and collectively.

12.     Dirty Dough. The term Dirty Dough shall mean Dirty Dough LLC and any of its agents, affiliates, or representatives, individually and collectively.

4

13. <u>Complaint</u>. The term "Complaint" shall refer to Crumbl's amended complaint filed in the above-captioned case.

14. <u>Crumbl Information</u>. The term "Crumbl Information" shall refer to those items downloaded from Crumbl's internal file storage system and produced to Crumbl by Tracy Warner, among others.

15. <u>Business Research</u>. The term "Business Research" shall refer to that process of gathering comprehensive data and information, including distilling that data into written reports or memoranda, of all the areas of Crumbl's business and incorporating this information for sales and profit maximization.

16. <u>Motion for Preliminary Injunction.</u> The term "Motion for Preliminary Injunction" shall mean ECF no. 37 filed in this case by Crumbl on September 16, 2022, attached hereto for reference as **Exhibit 1**.

## <u>INSTRUCTIONS</u>

1. If any information called for by any Interrogatory is not available in the full detail requested, such Interrogatory shall be deemed to require you to set forth the information related to the subject matter of the request in such detail as is available, including and describing the method by which any estimate is made.

2. If you believe that all or any part of an Interrogatory or Request would invade any privilege which you desire to assert, you shall nonetheless respond to each part of the Interrogatory or Request which does not invade the asserted privilege. As to each part for which any privilege is claimed, you shall produce a privilege log, identifying each such document by providing the following information:

a. The date of the document;

5

      b.      The general nature of the document, i.e. letter, memorandum, note, etc.;

      c.      The author of the document;

      d.      The addressee(s), recipients(s), or intended recipient(s) of the document or any copies thereof;

      e.      All persons who have been shown the document or a copy thereof; and,

      f.      A general description of the subject matter of the document.

3.      If you attempt to answer any Interrogatory by production of documents, designate which documents are responsive to which Interrogatory, including the subsection thereof, as required by Rule 33(d)(1) of the Federal Rules of Civil Procedure.

4.      With respect to any of the following Interrogatories or parts thereof as to which you, after answering, acquire additional information, knowledge, or documents, Plaintiff requests that you provide further answers to such Interrogatories within thirty (30) days after acquiring such additional information, knowledge, or documents.

5.      If a document for which identification or production is sought has been lost or destroyed, you shall produce the following information with respect thereto:

      a.      The original date of the destroyed or lost evidence;

      b.      The general nature of the destroyed or lost evidence;

      c.      The original author(s), addressee(s), recipient(s) and intended recipient(s) of any such destroyed or lost evidence;

      d.      The parties to the destroyed or lost evidence;

      e.      A detailed description of the contents of the destroyed or lost evidence;

      f.      The identity of the custodian of the destroyed or lost evidence at the time it was destroyed or lost;

g.      The reasons for destruction or explanation of the loss of the destroyed or lost evidence;

h.      The identity or the person who gave instructions for destruction of the document;

i.      The identity of the person(s) who destroyed or lost the destroyed or lost evidence; and,

j.      The date on which the destroyed or lost evidence was destroyed or lost.

6.      You shall state completely the reasons for objection to any Interrogatory, and objection to only part or a portion of an Interrogatory or Request shall not relieve you of the obligation to respond to the remainder of the Interrogatory or Request.

7.      Each Request should be construed independently. No Interrogatory or Request should be construed by reference to any other Interrogatory or Request if the result is a limitation in the scope of the answer to such Request.

## **INTERROGATORIES**

**INTERROGATORY NO. 1**:      In your Complaint, you state that "Dirty Dough's use of the Infringing Trade Dress creates a substantial likelihood of consumer confusion or mistake regarding the affiliation, connection, or association of Crumbl with Dirty Dough, and may cause consumers to mistakenly believe that Crumbl owns or has sponsored or approved Dirty Dough's cookie business." (Amended Complaint, 22, ¶ 73.) Please identify, including by setting forth the name and contact information of the person and the date, and describe with reasonable particularity, each and every instance of consumer confusion or mistake regarding the affiliation, connection, or association of Crumbl with Dirty Dough.

7

**INTERROGATORY NO. 2**:        In your Amended Complaint you identify a number of Registered Trademarks and Crumbl Trade Dress. For each Registered Trademark or Crumbl Trade Dress, as those terms are defined in the Amended Complaint, that you contend is infringed or copied by Dirty Dough in its alleged Infringing Trade Dress, state the date on which that mark or element was first conceived by plaintiffs and the date on which it was first used in commerce by plaintiff.

**INTERROGATORY NO. 3**:        In your Amended Complaint, you state that "Dirty Dough's misappropriation of Crumbl's trade dress is an intentional attempt to pass off its product as Crumbl's original, high-quality products by deceiving the relevant public and consumers." (Amended Complaint at 2, ¶ 2.) Please identify and describe, including, but not limited to, citations to the relevant documents, and specific portions thereof, every action by Dirty Dough you believe is "an intentional attempt to pass off its product as Crumbl's original, high-quality products by deceiving the relevant public and consumers."

**INTERROGATORY NO. 4**:        In your Amended Complaint, you state that "[a]t all times, Crumbl has taken reasonable and appropriate measures to maintain the confidentiality of and to protect is [sic] proprietary information." (Amended Complaint at 10, ¶ 28.) Please identify and describe, including, but not limited to, citations to the relevant documents, and specific portions thereof, each and every step Crumbl has taken to maintain the confidentiality of and to protect its proprietary information, including the Crumbl Information, and identify the individuals at Crumbl, and the roles of those individuals, that are permitted to access Crumbl's proprietary information, and any and all trainings pertaining to confidential or proprietary information given by Crumbl to employees, from the time of Crumbl's founding to the time it filed the Amended Complaint in this lawsuit.

**INTERROGATORY NO. 5**:        In your Amended Complaint, you allege that Dirty Dough has a "bad faith intent to build its business on Crumbl's goodwill." (Amended Complaint at 18, ¶ 44.) Please identify and describe, including, but not limited to, citations to the relevant documents, and specific portions thereof, every action by Dirty Dough you believe is a "bad faith intent to build its business on Crumbl's goodwill."

**INTERROGATORY NO. 6**:        Please identify and describe, including, but not limited to, citations to the relevant documents, and specific portions thereof, all Business Research, including but not limited to internal reports and memoranda and similar work performed by outside third-parties, Crumbl has performed or commissioned relating to any other companies who utilize a franchise model, including competitors in the cookie industry, beginning with Crumbl's founding to the date the Amended Complaint was filed.

**INTERROGATORY NO. 7**:        In your Motion for Preliminary Injunction, you state that "Dirty Dough stole Crumbl trades secrets [and] built its business on the back of those Stolen Trade Secrets." (Ex. A at 2.) Please identify and describe, including, but not limited to, citations to the relevant documents, and specific portions thereof, each and every basis upon which you rely for the claim that Dirty Dough "built its business on the back" of the purported "Stolen Trade Secrets," otherwise referred to herein as the Crumbl Information.

**INTERROGATORY NO. 8**:  In your Motion for Preliminary Injunction, you state that "It would have been incredibly difficult, if not impossible, for Dirty Dough to create a successful cookie business within just a few months without using the Stolen Trade Secrets." (Ex. A at 12.) Please identify and describe, including, but not limited to, citations to the relevant documents, and specific portions thereof, each and every basis upon which you rely for the claim Dirty Dough has used the Crumbl Information, which you refer to as the "Stolen Trade Secrets."

**INTERROGATORY NO. 9**:        In your Motion for Preliminary Injunction, you state that "[t]he evidence shows that Dirty Dough intended to copy—and did copy—key aspects of Crumbl" (Ex. A at 12. Please identify and describe, including, but not limited to, citations to the relevant documents, and specific portions thereof, each and every non-public facing aspect of Crumbl unrelated to the Crumbl Trade Dress—as defined in the Amended Complaint—you allege Dirty Dough has copied, and the exact basis upon which you rely to make that assertion.

**INTERROGATORY NO. 10**:        In your Motion for Preliminary Injunction, you state that "Dirty Dough acquired the trade secrets by 'induc[ing]' Bradley Maxwell to breach his 'duty to maintain secrecy.'" (Ex. A at 21.) Please identify and describe, including, but not limited to, citations to the relevant documents, and specific portions thereof, the factual basis upon which you relied to make this assertion.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1**:    Produce all documents and communications you relied upon in responding to or support your responses to the above interrogatories.

**REQUEST NO. 2**:    Produce all documents and communications by and between Crumbl and each and every Crumbl employee, including with third parties, where Dirty Dough, Bennett Maxwell, or Bradley Maxwell are directly or indirectly discussed or referenced, from January 2019 to the present.

**REQUEST NO. 3**:    Produce all documents and communications concerning any allegation in the Amended Complaint that Dirty Dough willfully, knowingly, or intentionally adopted or used Dirty Dough's alleged Infringing Trade Dress to cause confusion, to cause mistake, or to deceive.

**REQUEST NO. 4**:    Produce all documents and communications discussing or referring to this lawsuit, Dirty Dough (including Dirty Dough's use of the alleged Infringing Trade Dress and the Crumbl Information), and/or any principal, employee, or independent contractor of Dirty Dough, whether the communications be internal or with third parties.

**REQUEST NO. 5**:    Produce a privilege log of all documents withheld pursuant to a claim of privilege, identifying the document by date, general description, and recipients, and setting forth the basis for withholding the document.

**REQUEST NO. 6**:    Produce all documents and communications that Crumbl has produced as part of its disclosures or in response to discovery requests in the case styled *Crumbl LLC, a Utah Limited Liability Company, CRUMBL IP, LLC, a Utah Limited Liability Company, and CRUMBL FRANCHISING, LLC, a Utah Limited Liability Company v. CRAVE COOKIES, LLC, a Utah Limited Liability Company, and CRAVE COOKIES FRANCHISING, LLC,* Civil No. 2:22-cv-00319, in the U.S. District Court for the District of Utah, Central Division.

## REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1**:    Admit Crumbl did not send Dirty Dough any "cease and desist" communication before filing this lawsuit.

**REQUEST FOR ADMISSION NO. 2**:    Admit that one of the reasons Crumbl filed this lawsuit was to generate publicity.

**DATED:**    May 31, 2023.

                                **BUCHALTER P.C.**

                                */s/  Jack L. Darrington*
                                Douglas P. Farr
                                Jacob D. Barney
                                Jack L. Darrington
                                *Attorneys for Plaintiff*

# EXHIBIT B

Elliot J. Hales (#16684)
Michele M. Myer (#13815)
**DORSEY & WHITNEY LLP**
111 S. Main Street, Suite 2100
Salt Lake City, UT 84111
Telephone:  (801) 933-7360
Fax:  (801) 933-7373
hales.elliot@dorsey.com
myer.michele@dorsey.com

Case Collard (admitted *pro hac vice*)
**DORSEY & WHITNEY LLP**
1400 Wewatta Street, Suite 400
Denver, CO 80202
Telephone:  (303) 689-3400
Fax:  (303) 629-3450
collard.case@dorsey.com

Vanessa J. Szalapski (admitted *pro hac vice*)
**DORSEY & WHITNEY LLP**
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone: (612) 340-2600
Fax: (612) 340-2868
szalapski.vanessa@dorsey.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRALCENTRAL DIVISION

| | |
|---|---|
| **CRUMBL LLC**, a Utah Limited Liability Company, **CRUMBL IP, LLC**, a Utah Limited Liability Company, and **CRUMBL FRANCHISING, LLC**, a Utah Limited Liability Company, <br><br> Plaintiffs, <br><br> vs. <br><br> **DIRTY DOUGH LLC**, an Arizona Limited Liability Company, and **BRADLEY MAXWELL**, an individual, <br><br> Defendants. | **PLAINTIFF'S RESPONSES TO DEFENDANT DIRTY DOUGH'S FIRST SET OF WRITTEN DISCOVERY REQUESTS** <br><br> Civil No. 2:22-cv-00318-HCN-CMR2:22-cv-00318-HCN-CMR <br><br> Judge Howard C. Nielson, Jr. <br><br> Magistrate Judge Cecelia M. Romero |

Pursuant to Federal Rules of Civil Procedure 26, 33, 34, and 36, and the Local Rules of the United States District Court of Utah, Plaintiffs Crumbl LLC, Crumbl IP, LLC, and Crumbl Franchising, LLC (collectively "Crumbl") hereby submits its response to Dirty Dough LLC's

("Dirty Dough") First Set of Written Discovery Requests.

## INTERROGATORIES

**INTERROGATORY NO. 1:** In your Complaint, you state that "Dirty Dough's use of the Infringing Trade Dress creates a substantial likelihood of consumer confusion or mistake regarding the affiliation, connection, or association of Crumbl with Dirty Dough, and may cause consumers to mistakenly believe that Crumbl owns or has sponsored or approved Dirty Dough's cookie business." (Amended Complaint, 22, ¶ 73.) Please identify, including by setting forth the name and contact information of the person and the date, and describe with reasonable particularity, each and every instance of consumer confusion or mistake regarding the affiliation, connection, or association of Crumbl with Dirty Dough.

**RESPONSE:**

Crumbl objects to the terms and phrases "identify," "including by," "reasonable particularity," and "each and every instance" as overly broad, vague, ambiguous and/or undefined. Crumbl also objects to the extent that this interrogatory seeks information that is not within Crumbl's possession, custody, or control. Crumbl does not know the name and contact information or the dates of the likelihood of consumer confusion created by Dirty Dough's infringing and misappropriated products and services. Crumbl further objects on the ground that Crumbl further objects to the extent that this request is directed to information in Dirty Dough's possession and control because, as the copycat, Dirty Dough is likely to have information related to instances of actual confusion. Crumbl also objects on the ground that this Interrogatory requests information protected by the attorney-client privilege, work product privilege, or any other applicable privilege. Crumbl also objects to the extent this Interrogatory requests information subject to or protected by any confidentiality obligation owed to a third party.

Subject to the foregoing specific objections, and to the extent it currently understands this Interrogatory, Crumbl responds that the aforementioned allegation in paragraph 73 of the Amended Complaint describes the likelihood of confusion created by Dirty Dough's infringing products and services, which also includes recipes and processes which are the result of Dirty

Dough's misappropriation of Crumbl's trade secrets. As set forth in Crumbl's complaint, Dirty

Dough has copied a host of aspects of Crumbl's business, misappropriated Crumbl's trade

secrets, and uses Crumbl's trade dress in a manner that is likely to cause consumer confusion.

The name and contact information of consumers that are likely to be confused or the date of that

confusion is not currently within Crumbl's possession, custody, or control. Crumbl is currently

aware of instances of customer confusion which have occurred, these instances are primarily on

social media. Pursuant to Fed. R. Civ. P. 33(d), Crumbl identifies the following documents as

responsive to this request:

- CRUMBL_DD_00006275
- CRUMBL_DD_00006333
- CRUMBL_DD_00006346
- CRUMBL_DD_00006555
- CRUMBL_DD_00006607
- CRUMBL_DD_00006817
- CRUMBL_DD_00007925
- CRUMBL_DD_00000034
- CRUMBL_DD_00000038
- CRUMBL_DD_00000060
- CRUMBL_DD_00000153

Discovery in this matter is ongoing, as is Crumbl's investigation into information that is

responsive to this Interrogatory. As such, Crumbl reserves the right to change, amend, or

supplement this response as additional facts are ascertained and investigation is undertaken.

**INTERROGATORY NO. 2:** In your Amended Complaint you identify a number of
Registered Trademarks and Crumbl Trade Dress. For each Registered Trademark or Crumbl

Trade Dress, as those terms are defined in the Amended Complaint, that you contend is infringed or copied by Dirty Dough in its alleged Infringing Trade Dress, state the date on which that mark or element was first conceived by plaintiffs and the date on which it was first used in commerce by plaintiff.

## RESPONSE (WHICH CRUMBL TREATS AS INTERROGATORY NUMBERS 2 AND 3):

Crumbl objects to the terms and phrases "plaintiff," "plaintiffs,'" and "first conceived" as overly broad, vague, ambiguous, and/or undefined. Crumbl also objects to the extent this interrogatory seeks information that is not within the possession, custody, or control of Crumbl. Crumbl also objects on the ground that this Interrogatory requests information protected by the attorney-client privilege, work product privilege, or any other applicable privilege. Crumbl also objects to this Interrogatory on the ground that it is compound, and contains two separate, distinct subparts, each of which is directed to a different subject matter of inquiry: (1) the date on which the Registered Trademarks were first conceived and first used in commerce; and (2) the date on which each element of the Crumbl Trade Dress was first conceived and first used in commerce. Accordingly, Crumbl will treat this Interrogatory No. 2 as presenting two of the twenty-five written interrogatories allotted to each party under Fed. R. Civ. P. 33(a)(1) and the Court's Scheduling Order.

Subject to the foregoing specific objections, and to the extent it currently understands this Interrogatory, Crumbl responds as follows:

With respect to Dirty Dough's Interrogatory relating to Crumbl's Trademarks (which Crumbl treats as Interrogatory Number 2)

Registered Trademarks:

- Crumbl Cookies Logo, U.S. Reg. No. 5,855,051: conceived on or about March 2018; first used in commerce on or about April 19, 2018.

- Crumbl, U.S. Reg. No. 5,910,669: conceived on or about summer of 2017; first used in commerce on or about August 16, 2017.

- Crumbl Cookies packaging, U.S. Reg. No. 6,305,598: conceived on or about May of 2018; first used in commerce on or about November 28, 2018.

<u>With respect to Dirty Dough's Interrogatory relating to Crumbl's Trade Dress (which Crumbl treats as Interrogatory Number 3)</u>

<u>Crumbl Trade Dress:</u>

- Decorative graphics appearing as a cookie with a bite taken out of it: conceived on or about July 2018; first used in commerce on or about summer 2018.

- Cookie boxes: conceived on or about Spring of 2018; first used in commerce on or about May 2018.

- Outline-shaped drawings: conceived on or about July 2018; first used in commerce on or about summer 2018.

- Weekly rotating menu: conceived on or about May 2018; first used in commerce on or about summer 2018.

- Pink color scheme: conceived on or about August 2017; first used in commerce on or about September 2017.

Discovery in this matter is ongoing, as is Crumbl's investigation into information that is responsive to this Interrogatory. As such, Crumbl reserves the right to amend, change, or supplement this response as additional facts are ascertained and investigation is undertaken.

**INTERROGATORY NO. 3**: In your Amended Complaint, you state that "Dirty Dough's misappropriation of Crumbl's trade dress is an intentional attempt to pass off its product as Crumbl's original, high-quality products by deceiving the relevant public and consumers." (Amended Complaint at 2, ¶ 2.) Please identify and describe, including, but not limited to, citations to the relevant documents, and specific portions thereof, every action by Dirty Dough

you believe is "an intentional attempt to pass off its product as Crumbl's original, high-quality products by deceiving the relevant public and consumers."

**RESPONSE (WHICH CRUMBL TREATS AS INTERROGATORY NUMBER 4):**

Crumbl objects to the phrase "every action" as overly broad, vague, ambiguous, and/or undefined. Crumbl also objects to the extent this interrogatory seeks information that is not within the possession, custody, or control of Crumbl. Crumbl further objects to the extent that this request is directed to information in Dirty Dough's possession and control because, as the copycat, Dirty Dough is likely to have information related to its attempts to pass off its products as Crumbl products.

Subject to the foregoing specific objections, and to the extent it currently understands this Interrogatory, Crumbl responds that relevant documents include, but are not limited to the following. Among the evidence that points to this intention are statements made by Tyler Peery indicating that Bennett Maxwell "transitioned everything to be exactly like Crumbl" following his purchase of Dirty Dough, and communications made by Dirty Dough and Maxwell to third parties describing the business as following Crumbl's model. (Doc. DD023715)(Dkt. 105-8). These communications include Dirty Dough's pitches include referencing Crumbl specifically. (Doc. DD023715)(Dkt. 105-6). Intentional attempts at passing off are also evidenced by Dirty Dough's attempts to copy Crumbl's website and related design. (Doc. DD023824, DD021964, DD021965-21968) (Dkt. 105-1, Dkt. 105-2, Dkt. 105-3). Dirty Dough is "following the model the Crumbl Cookies has created." (DD022873)(Dkt 105-5).

Discovery in this matter is ongoing, as is Crumbl's investigation into information that is responsive to this Interrogatory. As such, Crumbl reserves the right to amend, change, or supplement this response as additional facts are ascertained and investigation is undertaken.

**INTERROGATORY NO. 4**: In your Amended Complaint, you state that "[a]t all times, Crumbl has taken reasonable and appropriate measures to maintain the confidentiality of and to

protect is [sic] proprietary information." (Amended Complaint at 10, ¶ 28.) Please identify and describe, including, but not limited to, citations to the relevant documents, and specific portions thereof, each and every step Crumbl has taken to maintain the confidentiality of and to protect its proprietary information, including the Crumbl Information, and identify the individuals at Crumbl, and the roles of those individuals, that are permitted to access Crumbl's proprietary information, and any and all trainings pertaining to confidential or proprietary information given by Crumbl to employees, from the time of Crumbl's founding to the time it filed the Amended Complaint in this lawsuit.

**RESPONSE (WHICH CRUMBL TREATS AS INTERROGATORY NUMBER 5):**

Crumbl objects to the terms and phrases "access" "each and every step" and "identify the individuals at Crumbl" as overly broad, vague, ambiguous, and/or undefined. Crumbl also objects to the extent this interrogatory is unduly burdensome or disproportionate to the needs of the case; as stated the request would require Crumbl to identify all individuals permitted to view the recipes, including bakers at all its franchise locations, and would result in a large volume of information that would be irrelevant and disproportionate to the needs of the case. Crumbl also objects on the ground that this Interrogatory requests information protected by the attorney-client privilege, work product privilege, or any other applicable privilege.

Subject to the foregoing specific objections, and to the extent it currently understands this Interrogatory, Crumbl responds as follows:

Since around 2018, Crumbl has maintained its proprietary information on an internal server which is password-protected. Access to some of all of such information is limited to those current employees who need such information for their job duties. In order to access the internal server, a user must receive an authentication code on their cell phone. In addition, Crumbl provides its recipes to its franchisees via an iPad application, which is an application that was built for Crumbl for the purpose of maintaining confidentiality of its recipes. This application requires both a security pin and is only accessible in certain geographic locations to increase security. Crumbl also compartmentalizes other proprietary information on different software,

such as Dropbox. Access to some or all of this information is also limited to those current employees who need such information for their job duties. Recipes are also protected by including a "white packet" as part of each recipe. The white packet contains pre-measured ingredients for each recipe. The exact contents of each white packet is only known by a small number of key Crumbl employees and is not shared, which provides another layer of protection should Crumbl's recipes fall into the wrong hands, as they did here. Crumbl employees and franchisees and their employees must sign agreements acknowledging the proprietary and confidential nature of Crumbl's confidential information, including recipes, internal statistics, build-out guides, and business structure, and agreeing not to use or disclose such information without authorization from Crumbl. Section 3 of Crumbl's Non-Disclosure Agreement provides that reverse engineering of recipes is prohibited.

Discovery in this matter is ongoing, as is Crumbl's investigation into information that is responsive to this Interrogatory. As such, Crumbl reserves the right to amend, change, or supplement this response as additional facts are ascertained and investigation is undertaken.

**INTERROGATORY NO. 5**: In your Amended Complaint, you allege that Dirty Dough has a "bad faith intent to build its business on Crumbl's goodwill." (Amended Complaint at 18, ¶ 4.) Please identify and describe, including, but not limited to, citations to the relevant documents, and specific portions thereof, every action by Dirty Dough you believe is a "bad faith intent to build its business on Crumbl's goodwill."

**RESPONSE (WHICH CRUMBL TREATS AS INTERROGATORY NUMBER 6):**

Crumbl objects to the phrase "every action," as overly broad, vague, ambiguous, and/or undefined. Crumbl also objects to the extent this interrogatory seeks information that is not within the possession, custody, or control of Crumbl. Crumbl also objects on the ground that this Interrogatory requests information protected by the attorney-client privilege, work product privilege, or any other applicable privilege.

Subject to the foregoing specific objections, and to the extent it currently understands this Interrogatory, Crumbl responds as follows. Information supporting the assertions in paragraph 44 of the First Amended Complaint include, but are not limited to, the following:

Bradley Maxwell began negotiating and in fact purchased an interest in Dirty Dough while he was still employed at Crumbl as a process engineer. Over the 2019 Memorial Day weekend, approximately one week after he bought a 15% interest in Dirty Dough, he downloaded at least 440 pages of the Stolen Trade Secrets and other proprietary information belonging to Crumbl, including internal statistics, build-out guides, cookie calendars and other confidential information. None of these items were necessary for Bradley's job duties at Crumbl at the time. Despite having signed multiple confidentiality and non-disclosure agreements that required him to return Crumbl's information. *See* Dkt. 38-5; 38-6; 136-4 (Doc. CRUMBL_DD_00000166).

Dirty Dough's prior majority owner, Tyler Peery, tenure, Dirty Dough intentionally distinguished itself from other cookie companies by "developing a permanent 24 cookie menu very similar to what you would see in a donut shop." (Doc. PEERY_0000001)(Dkt. 105-8). Dirty Dough spent thousands of dollars on creating the permanent menu signs and display cases. *Id.* After Bennett Maxwell bout out and took over the business, he "transitioned everything to be exactly like Crumbl."

Bennett Maxwell himself admitted that Dirty Dough was "riding Crumbl's coattail" and that "Crumbl got me interested, showed me what I wanted, what I didn't want. And then I had the opportunity, if I were to own the company Dirty Dough, I could build a model and make it as easy as possible. " (Doc. DD023715)(Dkt. 105-41 at 10); (Dkt. 38-1 at 2). Dirty Dough told a

potential partner that Dirty Dough is "a concept just like Crumbl cookies." (Doc. DD023715) (Dkt. 105-6).

Bennett Maxwell was able to build Dirty Dough quickly because he built it by utilizing the Stolen Trade Secrets. In or about July through September of 2021, approximately six months after he started running Dirty Dough, Bennett Maxwell began making changes to Dirty Dough, and asked Bradley Maxwell to discuss Crumbl information with Dirty Dough employees. Bennett Maxwell scheduled a meeting called "the Crumbl ops call." (Doc. DD022863)(Dkt. 105-25). During the call and in subsequent months, Bradley Maxwell shared the Stolen Trade Secrets with at least six Dirty Dough employees. Dirty Dough employee Tracy Warner stated that "It became clear, while I was at Dirty Dough, that Bennett Maxwell wanted me to know about Crumbl's operations and recipes." Dkt. 40 at ¶¶6. Warner's notes from her review of Crumbl's documents show that she was identifying ways to make things more efficient and more standardized. (Dkt. 38-12). When Dirty Dough was preparing to offer franchises, Dirty Dough employees requested additional information. Indeed, Tracy Warner requested additional Crumbl materials from Bradley Maxwell, asking via email for Crumbl's Operations Manual or Employee Training Manual. (Doc DD023568). Additional evidence concerning the bad faith intent of Dirty Dough is likely to be held by Dirty Dough and will be the subject of further discovery.

Crumbl also incorporates by reference its post preliminary injunction hearing brief (Dkt. 138) which also discusses Dirty Dough's intent to copy.

Discovery in this matter is ongoing, as is Crumbl's investigation into information that is responsive to this Interrogatory. As such, Crumbl reserves the right to change, amend, or supplement this response as additional facts are ascertained and investigation is undertaken.

**INTERROGATORY NO. 6**: Please identify and describe, including, but not limited to, citations to the relevant documents, and specific portions thereof, all Business Research, including but not limited to internal reports and memoranda and similar work performed by outside third-parties, Crumbl has performed or commissioned relating to any other companies who utilize a franchise model, including competitors in the cookie industry, beginning with Crumbl's founding to the date the Amended Complaint was filed.

**RESPONSE (WHICH CRUMBL TREATS AS INTERROGATORY NUMBER 7)**:

Crumbl objects to the terms and phrases "performed or commissioned" and "similar work'" as overly broad, vague, ambiguous, and/or undefined. Crumbl also objects on the ground that this Interrogatory requests information protected by the attorney-client privilege, work product privilege, or any other applicable privilege.

Subject to the foregoing specific objections, and to the extent it currently understands this Interrogatory, Crumbl responds as follows: Crumbl does not believe it has in its possession the requested documents. Discovery in this matter is ongoing, as is Crumbl's investigation into information that is responsive to this Interrogatory. As such, Crumbl reserves the right to amend, change, or supplement this response as additional facts are ascertained and investigation is undertaken.

**INTERROGATORY NO. 7**: In your Motion for Preliminary Injunction, you state that "Dirty Dough stole Crumbl trades secrets [and] built its business on the back of those Stolen Trade Secrets." (Ex. A at 2.) Please identify and describe, including, but not limited to, citations to the relevant documents, and specific portions thereof, each and every basis upon which you rely for the claim that Dirty Dough "built its business on the back" of the purported "Stolen Trade Secrets," otherwise referred to herein as the Crumbl Information.

**RESPONSE (WHICH CRUMBL TREATS AS INTERROGATORY NUMBER 8)**:

Crumbl objects to the terms and phrases "each and every," and "basis upon which you rely" as overly broad, vague, ambiguous, and/or undefined. Crumbl also objects to the extent this interrogatory seeks information that is not within the possession, custody, or control of Crumbl. Crumbl also objects on the ground that this Interrogatory requests information protected by the attorney-client privilege, work product privilege, or any other applicable privilege. Crumbl also

objects on the ground that these interrogatories are duplicative of and request the same information as does Interrogatory 5.

Subject to the foregoing specific objections, and to the extent it currently understands this Interrogatory, Crumbl responds by incorporating its response to Interrogatory No. 5 and its post preliminary injunction hearing brief (Dkt. 138). Crumble further states that the pace of Dirty Dough's success after Bennett Maxwell took over Dirty Dough in December 2020. In May 2019, when Bradley and Bennett Maxwell each purchased a 15% interest in Dirty Dough, Dirty Dough operated out of a single location. The Maxwells were passive investors at this time. See (Dkt. 105-14 at ROG 1). Dirty Dough's recipes were a list of ingredients without instructions. (Doc. PEERY_00000013). Dirty Dough had no franchises. It had a set cookie menu that did not rotate. Dirty Dough's gross sales for 2019 were $160,640.51, and Dirty Dough suffered a loss of $9,485.08. (Dkt. 105-15 at ROG 12). In 2020, Dirty Dough still had no franchises, had gross sales of $359,565.54, and suffered a loss of $29,703.43. *Id.* As noted in Exhibit 60 filed under seal in support of Crumbl's Preliminary Injunction Motion, Dirty Dough was able to sell franchises as an unprecedented rate by using Crumbl's protected information. *See* Dkt. 138-95, 105-9, 105-10. By May 2022, just seven months after making franchises available, Dirty Dough had sold 90 franchises. (Dkt. 105-9). By July 2022, Dirty Dough had sold 100-200 franchises within nine months of franchising. *See* Dkt. 105-10. As of December 6, 2022, Dirty Dough had opened four franchises and sold hundreds more, achieved gross sales of $3,504,960.66, and earned a profit of $999,673.55.  (Dkt. 105-15 at ROG 12).

Discovery in this matter is ongoing, as is Crumbl's investigation into information that is responsive to this Interrogatory. As such, Crumbl reserves the right to amend, change, or supplement this response as additional facts are ascertained and investigation is undertaken.

**INTERROGATORY NO. 8**: In your Motion for Preliminary Injunction, you state that "It would have been incredibly difficult, if not impossible, for Dirty Dough to create a successful cookie business within just a few months without using the Stolen Trade Secrets." (Ex. A at 12.) Please identify and describe, including, but not limited to, citations to the relevant documents, and specific portions thereof, each and every basis upon which you rely for the claim Dirty Dough has used the Crumbl Information, which you refer to as the "Stolen Trade Secrets."

**RESPONSE (WHICH CRUMBL TREATS AS INTERROGATORY NUMBER 9):**

Crumbl objects to the terms and phrases "each and every" and "basis upon which you rely'" as overly broad, vague, ambiguous, and/or undefined. Crumbl also objects to the extent this interrogatory seeks information that is not within the possession, custody, or control of Crumbl. Crumbl also objects on the ground that this Interrogatory requests information protected by the attorney-client privilege, work product privilege, or any other applicable privilege.

Subject to the foregoing specific objections, and to the extent it currently understands this Interrogatory, Crumbl responds as follows:

Crumbl incorporates by reference its responses to interrogatories 5 and 7 and its post-hearing brief which details the use of Crumbl's trade secret information. (Dkt. No. 138). Dirty Dough began selling franchises at the end of 2021, selling 60 franchises in five months. (Dkt. 105-15, Dkt. 105-9). In the next two months, Dirty Dough reached 90 franchises. Within a year of beginning franchising, Dirty Dough had established 200 franchises. This head start was made possible through the dissemination of the Stolen Trade Secrets and proprietary information. *See* Dkt. 138-95 (demonstrative growth chart from Preliminary Injunction Hearing).

Discovery in this matter is ongoing, as is Crumbl's investigation into information that is responsive to this Interrogatory. As such, Crumbl reserves the right to amend, change, or supplement this response as additional facts are ascertained and investigation is undertaken.

**INTERROGATORY NO. 9**: In your Motion for Preliminary Injunction, you state that "[t]he evidence shows that Dirty Dough intended to copy—and did copy—key aspects of Crumbl" (Ex. A at 12.) Please identify and describe, including, but not limited to, citations to the relevant documents, and specific portions thereof, each and every non-public facing aspect of

Crumbl unrelated to the Crumbl Trade Dress—as defined in the Amended Complaint—you allege Dirty Dough has copied, and the exact basis upon which you rely to make that assertion.

### **RESPONSE (WHICH CRUMBL TREATS AS INTERROGATORY NUMBER 10):**

Crumbl objects to the terms and phrases "each and every," "non-public facing aspect,'" and "unrelated to" as overly broad, vague, ambiguous, and/or undefined. Crumbl also objects to the extent this interrogatory seeks information that is not within the possession, custody, or control of Crumbl.

Subject to the foregoing specific objections, and to the extent it currently understands this Interrogatory, Crumbl responds as follows. The evidence supporting the aforementioned statement includes, but is not limited to the following:

Crumbl incorporates its response to Interrogatory Number 5, 7, and 8 regarding Dirty Dough's intent to copy as well as its post-hearing brief (Dkt. 138) which details the use of Crumbl's trade secret information. Recipes provided by Dirty Dough demonstrate the use of similar processes. Dirty Dough has argued that its process of making dough in an off-site location is significantly different from Crumbl's on-site cookie dough mixing, however Bradley Maxwell admitted that Crumbl had an operation with similar processes of making dough off-site and freezing the dough for shipment. (PI Hrg. Tr. 137:10-138:3). Dirty Dough also copied Crumbl's rotating menu and boxes. Crumbl also incorporates Dkt. 105-15, 38-11, 38-12, 38-13, 105-25, 105-18, 105-33, 101-1(Consilio Report). Crumbl has also spoken with former Dirty Dough employees who indicated that Dirty Dough was trying to find copycat Crumbl recipes and flavors. Discovery in this matter is ongoing, as is Crumbl's investigation into information that is responsive to this Interrogatory. As such, Crumbl reserves the right to change, amend, or supplement this response as additional facts are ascertained and investigation is undertaken.

**INTERROGATORY NO. 10**: In your Motion for Preliminary Injunction, you state that "Dirty Dough acquired the trade secrets by 'induc[ing]' Bradley Maxwell to breach his 'duty to

maintain secrecy.'" (Ex. A at 21.) Please identify and describe, including, but not limited to, citations to the relevant documents, and specific portions thereof, the factual basis upon which you relied to make this assertion.

### RESPONSE (WHICH CRUMBL TREATS AS INTERROGATORY NUMBER 11):

Crumbl objects to the extent this interrogatory seeks information that is not within the possession, custody, or control of Crumbl. Crumbl also objects on the ground that this Interrogatory requests information protected by the attorney-client privilege, work product privilege, or any other applicable privilege.

Subject to the foregoing specific objections, and to the extent it currently understands this Interrogatory, Crumbl responds as follows. The evidence supporting the aforementioned statement includes, but is not limited to the following: In the fall of 2021, Bennett Maxwell induced Bradley Maxwell to breach his duty to maintain secrecy regarding the Stolen Trade Secrets. This included retaining Bradley Maxwell as an independent contractor and Bennett Maxwell arranging a meeting between his brother Bradley Maxwell, whom he specifically identified as a former Crumbl employee, with a Dirty Dough employee. (Dkt. 38-11). This dissemination included the scheduling of a meeting called "the Crumbl ops call." (Doc. DD022863)(Dkt. 105-25). During this time Bradley Maxwell shared the Stolen Trade Secrets with at least six Dirty Dough employees. Dirty Dough employee Tracy Warner stated that "It became clear, while I was at Dirty Dough, that Bennett Maxwell wanted me to know about Crumbl's operations and recipes." Dkt. 40 at ¶¶6. Indeed, Tracy Warner requested additional Crumbl materials from Bradley Maxwell after she received the Stolen Trade Secrets from Bradley Maxwell, asking via email for Crumbl's Operations Manual or Employee Training Manual. (Doc. DD023568). In his deposition testimony, Bradley Maxwell stated that Dirty Dough employees asked him for information, and he complied. He was asked questions by at least Tracy Warner and he accessed the files to answer her questions. (Bradley Maxwell Depo.

at 114:11-122:24). Crumbl also incorporates its post hearing brief, Dkt. 138.  Additional evidence concerning the conduct Dirty Dough is likely to be held by Dirty Dough and will be the subject of further discovery.

Discovery in this matter is ongoing, as is Crumbl's investigation into information that is responsive to this Interrogatory. As such, Crumbl reserves the right to change, amend, or supplement this response as additional facts are ascertained and investigation is undertaken.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1**: Produce all documents and communications you relied upon in responding to or support your responses to the above interrogatories.

**RESPONSE:**

Crumbl objects to this request on the ground that the terms and phrases "all documents and communications," "relied upon," "in responding to," and "or support your responses" are overly broad, ambiguous, vague, and/or undefined. Crumbl also objects on the ground that this request seeks information protected by the attorney-client privilege, work product privilege, or any other applicable privilege.

Subject to and without waiving the foregoing objections, and to the extent that Crumbl understands this request, Crumbl responds as follows: Crumbl will produce non-privileged, responsive documents it used in answering the above interrogatories.

**REQUEST NO. 2**: Produce all documents and communications by and between Crumbl and each and every Crumbl employee, including with third parties, where Dirty Dough, Bennett Maxwell, or Bradley Maxwell are directly or indirectly discussed or referenced, from January 2019 to the present.

**RESPONSE:** Crumbl objects to this request on the ground that the terms and phrases "all documents and communications," "each and every Crumbl employee," and "directly or indirectly discussed or referenced" are overly broad, ambiguous, vague, and/or undefined. Crumbl also objects to the extent that this request seeks information that is not within Crumbl's

possession, custody, or control. Crumbl also objects on the ground that this request seeks information protected by the attorney-client privilege, work product privilege, or any other applicable privilege. Crumbl further objects to this request on the grounds that it is not limited to documents that are relevant to the claims and defenses in this litigation.

Subject to and without waiving the foregoing objections, and to the extent that Crumbl understands this request, Crumbl responds as follows: Crumbl will produce non-privileged, responsive documents within its possession, custody, or control referencing Bennett Maxwell, Bradley Maxwell, or Dirty Dough that are relevant to the claims or defenses in this case.

**REQUEST NO. 3**: Produce all documents and communications concerning any allegation in the Amended Complaint that Dirty Dough willfully, knowingly, or intentionally adopted or used Dirty Dough's alleged Infringing Trade Dress to cause confusion, to cause mistake, or to deceive.

**RESPONSE:** Crumbl objects to this request on the ground that the terms and phrases "all documents and communications" and "concerning any allegation" are overly broad, ambiguous, vague, and/or undefined. Crumbl also objects to the extent that this request seeks information that is not within Crumbl's possession, custody, or control. Crumbl also objects on the ground that this request seeks information protected by the attorney-client privilege, work product privilege, or any other applicable privilege.

Subject to and without waiving the foregoing objections, and to the extent that Crumbl understands this request, Crumbl responds as follows: Crumbl will produce non-privileged, responsive documents within its possession, custody, or control relating to its allegations in the First Amended Complaint that Dirty Dough willfully, knowingly, or intentionally adopted or used Dirty Dough's alleged Infringing Trade Dress to cause confusion, to cause mistake, or to deceive.

**REQUEST NO. 4:** Produce all documents and communications discussing or referring to this lawsuit, Dirty Dough (including Dirty Dough's use of the alleged Infringing Trade Dress and

the Crumbl Information), and/or any principal, employee, or independent contractor of Dirty Dough, whether the communications be internal or with third parties.

**RESPONSE:** Crumbl objects to this request on the ground that the terms and phrases "all documents or communications" and " any principal, employee, or independent contractor of Dirty Dough" are overly broad, ambiguous, vague, and/or undefined. Crumbl may not be aware of all principals, employees, or independent contractors of Dirty Dough. Crumbl also objects to the extent that this request seeks information that is not within Crumbl's possession, custody, or control. Crumbl also objects on the ground that this request seeks information protected by the attorney-client privilege, work product privilege, or any other applicable privilege.

Subject to and without waiving the foregoing objections, and to the extent that Crumbl understands this request, Crumbl responds as follows: Crumbl will produce non-privileged, responsive documents or communications within its possession, custody, or control regarding Dirty Dough, it's use of the Infringing Trade Dress and Crumbl's proprietary information, or known principals, employees, or independent contractors of Dirty Dough of which Crumbl is aware.

**REQUEST NO. 5**: Produce a privilege log of all documents withheld pursuant to a claim of privilege, identifying the document by date, general description, and recipients, and setting forth the basis for withholding the document.

**RESPONSE:** Crumbl objects to the extent this request seeks to impose obligations on Crumbl that go beyond those imposed by the applicable rules of civil procedure or by the Court's Scheduling Order. Crumbl also objects on the ground that "general description" is vague, ambiguous, and/or undefined. Subject to and without waiving the foregoing objections, and to the extent that Crumbl understands this request, Crumbl responds as follows: Crumbl will provide a privilege log of all documents withheld pursuant to a claim of privilege that comports

with the requirements of Fed. R. Civ. P. 26(b)(5). Crumbl will not provide a log of privileged

communications between counsel and Crumbl after May 10, 2022.

**REQUEST NO. 6**: Produce all documents and communications that Crumbl has
produced as part of its disclosures or in response to discovery requests in the case styled *Crumbl
LLC, a Utah Limited Liability Company, CRUMBL IP, LLC, a Utah Limited Liability Company,
and CRUMBL FRANCHISING, LLC, a Utah Limited Liability Company v. CRAVE COOKIES,
LLC, a Utah Limited Liability Company, and CRAVE COOKIES FRANCHISING, LLC,* Civil
No. 2:22-cv-00319, in the U.S. District Court for the District of Utah, Central Division.

**RESPONSE:** Crumbl objects to this Request on the ground that it seeks information that

is not relevant to any of the issues in the case nor is it likely to lead to the discovery of

admissible evidence, and as it is overly broad and unduly burdensome. Crumbl objects to this

request as it seeks documents that are neither relevant to the claims at issue, nor are they likely to

lead to the discovery of relevant evidence.  There may also be confidential business information

that was produced in the Crave matter that is not relevant to this matter and it would be

burdensome to review the entire production to ensure that it is appropriate to produce in this

matter.  This request fails to set forth a sufficiently defined scope of discovery or to adequately

identify the type or nature of documents sought so as to reach any specific documents. *Okla. ex

rel. Edmondson v. Tyson Foods, Inc.*, No. 05-CV-329-TCK-SAJ, 2006 U.S. Dist. LEXIS 72769,

at *10 (N.D. Okla. Oct. 4, 2006) (holding that discovery requests seeking documents regarding a

separate action were not properly articulated on relevance grounds). If there are specific

documents that Dirty Dough seeks that were produced in the Crave litigation please provide a

basis for their relevance and Crumbl will consider it.

## REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1**: Admit Crumbl did not send Dirty Dough any "cease and desist" communication before filing this lawsuit.

**RESPONSE:** Crumbl objects to this Request on the ground that it seeks information that is not relevant to any of the issues in the case nor is it likely to lead to the discovery of admissible evidence. Crumbl also objects to the extent this Request seeks the disclosure of information protected by the attorney-client privilege.

Subject to and without waiving its objections, Crumbl responds as follows: Admit.

**REQUEST FOR ADMISSION NO. 2**: Admit that one of the reasons Crumbl filed this lawsuit was to generate publicity.

**RESPONSE:** Crumbl objects to this Request on the ground that it seeks information that is not relevant to any of the issues in the case nor is it likely to lead to the discovery of admissible evidence. Crumbl also objects to the extent this Request seeks the disclosure of information protected by the attorney-client privilege.

Subject to and without waiving its objections, Crumbl responds as follows: Denied.

DATED this 30th day of June, 2023.

DORSEY & WHITNEY LLP

/s/ *Case Collard*
Case Collard (admitted pro hac vice)
Vanessa Szalapski (admitted pro hac vice)
Elliot J. Hales (#16684)
Michele M. Myer (#13815)
*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 30th day of June, 2023, a true and correct copy of the foregoing

document was served on the following counsel via email:

Douglas P. Farr (dfarr@buchalter.com)
Jacob D. Barney (jbarney@buchalter.com)
Jack Darrington (jdarrington@buchalter.com)
Sean N. Egan (seannegan@sneganlaw.com)

*/s/ Case Collard*_____

EXHIBIT C

# Buchalter

60 E. South Temple
Suite 1200
Salt Lake City, UT 84111
801.401.8625 Phone

801.401.8688 Direct
dfarr@buchalter.com

August 31, 2023

**VIA E-MAIL (SZALAPSKI.VANESSA@DORSEY.COM)**

Vanessa J. Szalapski
Dorsey & Whitney LLP
50 South Sixth Street
Minneapolis, MN 55402-1498

      Re:     Meet and Confer re: Crumbl's Deficient Discovery Responses

Dear Vanessa:

The purpose of this letter is to identify certain deficiencies in Crumbl's Responses to Dirty Dough's First Set of Discovery Requests (the "**Responses**"). As you know, Dirty Dough served its written discovery requests on Crumbl on May 31, 2023. On June 30, 2023, Crumbl served its Responses. Then, on August 9 and August 17, 2023, Crumbl produced some documents in response to Dirty Dough's written discovery requests. As detailed below, Crumbl's discovery responses and productions are deficient, and, as a result, Dirty Dough requests a meet-and-confer to discuss these deficiencies.

## **INTERROGATORIES**

- **Interrogatory No. 3**

Crumbl responded by saying that "relevant documents include, but are not limited to the following." Crumbl must supplement its Responses to identify what other relevant documents were not identified in response to Interrogatory No. 3.

- **Interrogatory No. 4**

Crumbl objected to this interrogatory based on proportionality and relevancy, but this interrogatory goes to the heart of the case, and is neither disproportionate nor irrelevant. Crumbl has alleged misappropriation of trade secrets against Dirty Dough; accordingly, Dirty Dough is entitled to a detailed explanation of which people are entitled to access which information at

buchalter.com

Los Angeles
Denver
Napa Valley
Orange County
Portland
Sacramento
Salt Lake City
San Diego
San Francisco
Scottsdale
Seattle

# Buchalter

Vanessa J. Szalapski
August 31, 2023
Page 2

Crumbl. Dirty Dough is entitled to an explanation of the information that each employee at Crumbl, identified by their position, is entitled to access. Moreover, Dirty Dough is entitled to know how many Crumbl employees are able to access each category of information that Crumbl maintains internally. Finally, no documents were identified in response to this interrogatory. To the extent Crumbl maintains company documents explaining its confidentiality structures for the benefit of employees, Dirty Dough is entitled to discovery on this subject. If Crumbl does not maintain any documents detailing its internal policies regarding confidentiality, Crumbl must supplement its Responses to make that clear.

## **REQUESTS FOR PRODUCTION**

Based on a detailed review of Crumbl's production, Dirty Dough has reason to believe that Crumbl has not done a full or complete production, principally because there are some obvious gaps in the information that has been provided. Some specific examples, though this is not necessarily an exhaustive list, are identified below:

- **Request No. 2**

Crumbl is obligated to produce all communications referring Dirty Dough, both internally and externally. The document production makes clear that this obligation has not yet been met, with no explanation as to Crumbl's failure to do so.

For instance, there is correspondence between bacongoddess101221@gmail.com and Savannah Merrill that were forwarded to Hannah Neckel – but no other documents related to those communications. (*See* CRUMBL_DD_8357–59, 9033–35, and 9046–48). Please produce any and all other communications that took place following these initial emails, or confirm that no other communications took place and Crumbl simply did not follow up with this individual.

Likewise, at CRUMBL_DD-8374–75, Crumbl produced an email from Cynthia Wishon to Nate Whitaker with questions and an attached video – but no indication of any other communications to indicate that they had connected previously or since, raising questions as to how Cynthia Wishon obtained his email address, and what response if any was provided. Please supplement the production with all communications between Cynthia Wishon and Crumbl.

CRUMBL_DD_8377–78 is an email from Zach Lederman to several Crumbl employees, titled "Crumbl Status Follow ups_08.30.2022", with two attachments. The body of this email references one such attachment in section 2, "CEO Dirty Dough conquest recommendation", for which Mr. Lederman indicates he attached his "recommendations that was previously sent through." Please provide both attachments to this email.

# Buchalter

Vanessa J. Szalapski
August 31, 2023
Page 3

Further, in several copies of Mai Pham's email correspondence to the aforementioned Zach Lederman, she wrote "My CEO texted me Dirty Dough ads about 10-15x last week (Not one single Crumbl ad)." Yet no text messages were produced. Please supplement your production to include all messages.

Along the same as the above, there are no text messages produced in response to this request. We have Mai Pham acknowledging text exist from the CEO, and it beggars belief that of all the Crumbl employees, he only texted with Mai – please produce all texts, from all Crumbl employees, that discuss Dirty Dough, Bennett Maxwell, or Bradley Maxwell from January 2019 to the present.

CRUMBL_DD_ 8457–58 is an email in which Gregory Swain shared a spreadsheet with George Banner. But neither the spreadsheet attachment is included, nor any other communications between Mr. Swain and Mr. Banner—or to Rachel—were produced. Please supplement your production to include both this document attachment and all other communications.

CRUMBL_DD_ 9045 provides a brief part of what appears to be a partial communication between Britnee Bromley Neuhring and George Banner (and possibly others), with a title at the top of "#pr_sos". Please produce the entirety of this communication thread or confirm that despite this having every appearance of an ongoing thread, this is the entirety of this communication.

Additionally, we were surprised to find in your production emails from a vendor to Crumbl, producing Dirty Dough's signage and advertising specifications provided in an email from Sign Design Lab to Jonathan Bayles at Crumbl (CRUMBL_DD_9076–82). Yet, there are no emails from Mr. Bayles to Sign Design Lab, or in response to this email. Given the nature of the relationship between our two clients, it seems highly unlikely that such a coincidence of sending Dirty Dough's signage to a Crumbl employee does not have some communications as to how this came to occur. Please update your production with any communications from Mr. Bayles to Patrick McCormick and/or Sign Design Lab regarding this email.

In accordance with the many issues identified above, please provide a list of search terms that Crumbl used to identify documents for production.

- **Request No. 6**

Crumbl objected on grounds of relevance, overly broad, and undue burden. Does Crumbl intend to stand on these objections? The notion that this request is for information that is irrelevant, or that it would be unduly burdensome for Crumbl to produce the discovery from its case with Crave is not defendable. First, with respect to relevancy, Crumbl filed lawsuits against

Buchalter

Vanessa J. Szalapski
August 31, 2023
Page 4

Crave and Dirty Dough on *the same day*, and much of two complaints were copied and pasted from each other. Some of the claims are the exact same. To be sure, this case has also turned into one with allegations of misappropriation of trade secrets, but the trade dress and trademark allegations Crumbl levied against Crave and Dirty Dough were nearly identical. Accordingly, the suggestion that discovery from the Crave case is likely to lead to irrelevant or inadmissible evidence is plainly wrong.

Second, with respect to any burden, Crumbl already has performed a privilege review of all of the documents it produced in the Crave case, and it already has all of those documents in one place. There is a protective order in place in this case, and in the related Crave case. Thus, there is no undue burden related to Crumbl's review and production of these documents.

The request sets forth a definite scope of the documents Dirty Dough seeks: it seeks all of the documents Crumbl produced in the Crave case.

**CONCLUSION**

Please let me know when you will be available to meet and confer regarding the substantial issues with Crumbl's production thus far. The foregoing should not be construed as a waiver of any right or remedy available to Dirty Dough. Moreover, the foregoing is not necessarily a complete accounting of every problem Dirty Dough has identified in Crumbl's Responses. I look forward to discussing this matter with you.

Very truly yours,

BUCHALTER
A Professional Corporation

*Douglas Farr*

Douglas P. Farr
Shareholder

DPF:cb

cc:   Case Collard
      Michele Myer
      Elliot Hales
      crumbllitigation@dorsey.com